UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| GEORGE JOHNSON,<br><br>Plaintiff,<br><br>vs.<br><br>BRIAN BERGMAN and ANGI BERGMAN,<br><br>Defendants. | 5:23-CV-05008-CCT<br><br>**ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Plaintiff, George Johnson, moves for partial summary judgment on the issue of liability arising from a dog bite on August 9, 2022.[1] Docket 25. He asserts that there is no genuine factual dispute that the defendants, Brian and Angi Bergman ("the Bergmans"), negligently breached their duty to him as an invitee in their home when their dog, Jack, bit him. Docket 27 at 2–3. He specifically claims the Bergmans knew of Jack's dangerous propensities and failed to meet the proper duty of care owed to Johnson as dog owners. *Id.* at 9. Johnson also argues the Bergmans failed to present any evidence of his own contributory negligence or assumption of the risk. *Id.* at 10–11. The Bergmans do not dispute that Johnson was an invitee or that Johnson was injured when

---

[1] Johnson's amended complaint, Docket 4, and his deposition by the Bergmans' attorney, Docket 28-1 at 4, 5, indicate the dog bite occurred on or about August 11, 2022, but later evidentiary documents narrow this to August 9. *See* Docket 25; Docket 26 at 2; Docket 27 at 3; Docket 28-3 (date stamp on police body camera footage); Docket 28-4 (additional date stamp); Docket 31 at 1.

1

Jack bit Johnson. *See* Docket 31. The Bergmans oppose summary judgment on the basis that there are material factual disputes whether they breached their duty to Johnson and whether their alleged breach was the proximate cause of Johnson's injury. Docket 30 at 4. They also argue they presented sufficient evidence of a factual dispute as to whether Johnson was contributorily negligent. *Id.* at 4–5.

## BACKGROUND

### I. Factual

The following facts are relevant to this summary judgment motion. Johnson was a guest of the Bergmans during the Sturgis Motorcycle Rally of 2022 ("the Rally"). Docket 28-1 at 4; Docket 31 at 1. Johnson and his ex-brother-in-law, Bill Saint Clair, rented a room in the Bergmans' house to stay at during the Rally. Docket 28-1 at 4; Docket 28-5 at 6. At this time, the Bergmans owned a pet dog named Jack, a cross between a Labrador and a Vizsla. Docket 25; Docket 28-5 at 7.

The layout of the Bergmans' house relevant to this case consists of a main floor and second floor. Docket 28-3 (recording police body camera footage of the Bergmans' house). Upon entering the front door on the main floor, there is a living room area to the left and a door to the right leading to the Bergman's bedroom. *Id.*; Docket 28-1 at 5; Docket 28-3; Docket 28-5 at 6, 11. About three feet straight in front of the entryway is a staircase that leads upstairs. Docket 28-3; Docket 28-1 at 5. Johnson's and Saint Clair's bedroom was upstairs. Docket 28-5 at 6.

When Johnson and Saint Clair arrived at the Bergmans' house, Angi showed them into the house and was present when Johnson first saw and interacted with Jack. Docket 28-1 at 5; Docket 28-5 at 6. While the dog was "relatively friendly," it growled at Johnson, but Angi calmed it down. Docket 28-1 at 5. Johnson petted the dog during this first encounter. *Id.* Later that evening, as Johnson and Saint Clair descended the stairs to exit the front door, Jack was in the living room and Johnson claimed Jack growled at them with its hair raised. *Id.*

Johnson did not interact with Jack until the following afternoon on August 9, 2022, when he and Saint Clair returned to the Bergmans' after a motorcycle ride. *Id.* Johnson testified that upon reentering the house from their outing, Jack was again by the front door inside the house. *Id.* As Johnson and Saint Clair walked by, Jack snapped at the toiletry bag that Saint Clair was carrying in his left hand. *Id.* The parties dispute whether Johnson or anyone else informed the Bergmans that Jack snapped at Saint Clair. *Id.*; Docket 28-2 at 7; Docket 28-5 at 12. Johnson eventually made his way upstairs to his room. Docket 28-1 at 5.

A couple of hours later, Johnson left his room to fetch something from his motorcycle. *Id.* He testified that as he descended the stairs and left through the front door, Jack was in the living room and bit him as he opened the screen door.[2] *Id.* at 5–6. Angi testified that prior to Jack biting Johnson, she had

---

[2] Evidence in the record is contradictory whether Johnson was entering or exiting the house when Jack bit him. For purposes of partial summary judgment on liability, however, this discrepancy is immaterial.

3

locked Jack in her and Brian's bedroom next to the front door, claiming this was her usual practice whenever she and Brian were out of the house to prevent Jack from running away or being hit by a vehicle. Docket 28-5 at 8–9.

After Jack bit Johnson, the Bergmans attempted to treat and tend to his injury at their house, but Brian eventually drove Johnson to the nearby Lynn's Dakotamart for first aid supplies. Docket 28-2 at 3. During this time, Johnson contacted his daughter, a nurse, about the bite; at her prompting that he be seen by a doctor or hospital, Johnson decided to go to the hospital emergency room in Sturgis. Docket 28-1 at 6; *see* Docket 28-2 at 4. While being treated at the ER, the hospital contacted law enforcement due to Johnson's injury being a dog bite. Docket 28-1 at 6. Officer Skogen of the Sturgis Police Department arrived at the hospital and initially contacted Brian and spoke with him about the nature of Johnson's injury. Docket 28-4. Per procedure, Officer Skogen informed Brian that an Animal Bite Report/Confinement Agreement would need to be prepared and that she would meet him at his house to fill out the paperwork. *Id.*

After completing the paperwork at the Bergmans' house, Officer Skogen asked Angi if Jack had bitten anyone else in the past. Docket 28-3. Angi replied that a stranger came into their house unannounced about ten years prior during the Rally and Jack bit his hand. *Id.* However, during Angi's deposition, she recounted that Jack had barked and snapped at the person but did not bite him. Docket 28-5 at 7–8. She acknowledged later in her deposition that she had told Officer Skogen that Jack bit this stranger. *Id.* at 11–12; *see*

4

Docket 28-2 at 7. Johnson and Saint Clair decided to leave the following day, cutting their trip short by several days, due to Johnson's arm being stiff after the bite. Docket 28-1 at 7.

## II. Procedural

Johnson commenced this lawsuit on February 14, 2023, filing an amended complaint as a matter of right on February 17 of the same year. Dockets 1 and 4. He pled causes of action for nuisance and negligence. Docket 4 at 2–4. Then, on May 9, 2025, Johnson moved for partial summary judgment on the issue of the Bergmans' liability. Docket 25. The Court notes that only the claim of negligence and the Bergmans' affirmative defenses are in issue for purposes of Johnson's summary judgment motion. *See* Docket 27 at 1 ("The Defendants have admitted sufficient facts to affirm a dispositive finding of the Defendants' negligence[,]" and their "negligence is no longer a question of fact."); Docket 27 at 10–11.

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate and may be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *Foster v. Ethicon, Inc.*, 529 F. Supp. 3d 992, 996 (D.S.D. 2021) ("Rule 56(a) places the burden initially on the moving party to establish the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."). "The moving party can meet this burden by presenting evidence that there is no genuine dispute of material fact

5

or that the nonmoving party has not presented evidence to support an element of its case on which it bears the ultimate burden of proof." *Finneman v. United States Dep't of Ag.*, No. 5:23-CV-05034-KES, 2024 WL 5158473, at *4 (D.S.D. Dec. 17, 2024) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). If "the moving party has met that burden, the nonmoving party must establish that a material fact is genuinely disputed either by 'citing to particular parts of materials in the record' or 'by showing that the materials cited do not establish the absence . . . of a genuine dispute.'" *Foster*, 529 F. Supp. 3d at 996 (citations omitted). Summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). But a court views the evidence and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Finneman*, 2024 WL 5158473, at *5; *Foster*, 529 F. Supp. 3d at 997.

However, "[a] party opposing a properly supported motion for summary judgment 'may not merely point to unsupported self-serving allegations, but must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor, without resort to speculation, conjecture, or fantasy.'" *Foster*, 529 F. Supp. 3d at 997 (citation omitted); *see also Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))). A court

is not required to "plumb the record in order to find a genuine issue of material fact." *Barge v. Anheuser-Busch, Inc.,* 87 F.3d 256, 260 (8th Cir. 1996).

## DISCUSSION

### I.   Procedural Sufficiency

This Court first analyzes Johnson's procedural arguments, as found in his reply brief, Docket 32, which pertain to the Bergmans' response to his partial summary judgment motion, Docket 31, before addressing the merits of his motion at Docket 27 at 9–12 and Docket 32 at 2–3. Johnson argues the Bergmans failed to file their response brief within twenty-one days after service of Johnson's summary judgment motion as required by D.S.D. Civ. LR 7.1B. Docket 32 at 1. The Court agrees that the Bergmans' response brief was filed past the required twenty-one-day deadline for filing a responsive brief under D.S.D. Civ. LR 7.1B and also this Court's scheduling order. *See* Docket 24. However, the Court also notes that Johnson's reply brief was filed and served past the fourteen-day deadline. D.S.D. Civ. LR 7.1B.

While the Court could equally enforce these filing deadlines, leading to no consideration of the Bergmans' responsive documents, Dockets 29–31, and Johnson's reply brief, Docket 32, the Court will decide the merits of the summary judgment motion without concern to these filing defects. *See Braxton v. Bi-State Dev. Agency*, 728 F.2d 1105, 1107 (8th Cir. 1984) ("It is for the district court to determine what departures from its rules may be overlooked.").

Additionally, Johnson argues that the Bergmans' form of response to his statement of undisputed material facts, Docket 26, does not satisfy the

7

requirements of Local Rule 56.1(B). Docket 32 at 1. Johnson claims the Bergmans failed to respond to each individual statement of undisputed material facts. *Id.* The result of this would be that those facts asserted by Johnson in his statement of undisputed material facts, Docket 26, to which the Bergmans failed to properly respond, would be deemed admitted. *See* D.S.D. Civ. LR 56.1(D); Fed. R. Civ. P. 56(e)(2). However, from the Court's review, the Bergmans addressed each individually numbered paragraph of Johnson's statement of facts in their response. *See* Docket 31. As such, no facts are deemed admitted in Johnson's statement of undisputed material facts unless undisputed by the Bergmans.

## II.  Applicable Law

The parties do not dispute that South Dakota law governs Johnson's causes of action. *See* Dockets 27, 30, and 32. As the dog bite occurred in South Dakota and there is no federal law superseding state negligence law in this case, this Court finds South Dakota state law applicable. *See Erie R.R. Co. v. Tompkins* 304 U.S. 64, 72–73, 78 (1938); *Vandewarker v. Cont'l Resources, Inc.*, 917 F.3d 626, 629 (8th Cir. 2019) ("Because this is a diversity action, we apply 'the substantive law of the forum state, here North Dakota.'" (quoting *N. Oil & Gas, Inc. v. Moen*, 808 F.3d 373, 376 (8th Cir. 2015))).

To succeed on a negligence claim under South Dakota law, Johnson "must prove duty, breach of that duty, proximate and factual causation, and actual injury." *Hanson v. Big Stone Therapies, Inc.*, 916 N.W.2d 151, 158 (S.D. 2018) (quoting *Hamilton v. Sommers*, 855 N.W.2d 855, 861 (S.D. 2018)). To this

end, Johnson claims the Bergmans were negligent because they owed him a duty as dog owners and his being an invitee, that this duty was breached when they knew or should have known of Jack's abnormally dangerous propensities yet still failed to take reasonable care to control Jack, and that this breach led to Johnson sustaining injury from Jack's bite. Docket 4 at 2, 3–4.

In support of his negligence claim as it applies to summary judgment regarding the Bergmans' liability, Johnson argues (1) there exists no material factual dispute regarding the Bergmans' knowledge of Jack's dangerous propensities, (2) the Bergmans' affirmative defense of contributory negligence fails because of insufficient evidence, and (3) the Bergmans' affirmative defense of assumption of the risk fails because of insufficient evidence. Docket 27 at 9–12; Docket 32 at 2–3. The Bergmans do not dispute Johnson was an invitee on their property and that Jack actually caused Johnson's injury. Docket 31 at 1. They only argue there exists a dispute of material fact regarding their knowledge of Jack's dangerous propensities and whether Johnson was contributorily negligent. Docket 30 at 4–5.

### III. Whether there is a genuine dispute of material fact that the Bergmans knew or should have known of Jack's dangerous propensities.

Johnson argues that because Angi admitted in her deposition that she knew Jack bit someone several years prior to the attack on him, no material factual dispute exists as to the Bergmans' knowledge of Jack's dangerous propensities. Docket 27 at 9–10; *see* Docket 28-5 at 12. The Bergmans respond that this prior bite was no bite at all, but a "snap" instead. Docket 31 at 4.

Further, they argue this prior altercation was not demonstrative of Jack's dangerous propensities because the person Jack bit was trespassing. *Id.* In their view, it was reasonable for Jack to bark and snap at an intruder into their home. *Id.*

Before a defendant can be found liable to a plaintiff for negligence, there must exist "a duty owed by the defendant to the plaintiff, which requires the defendant to conform to a certain standard of conduct in order to protect the plaintiff against unreasonable risks . . . ." *Davies v. GCHP, LLC*, 980 N.W.2d 251, 258 (S.D. 2022) (alteration in original) (quoting *Zerfas v. AMCO Ins. Co.*, 873 N.W.2d 65, 69 (S.D. 2015)). "Negligence is the breach of a duty owed to another, the proximate cause of which results in an injury." *Ridley v. Sioux Empire Pit Bull Rescue, Inc.*, 932 N.W.2d 576, 580 (S.D. 2019).

The parties do not dispute that Johnson was a business invitee of the Bergmans as a guest at the Bergmans' home.[3] The South Dakota Supreme Court has identified that "the duty owed by a business owner to a business invitee and the duty owed by a dog owner to individuals in society have different origins," but "the reasonable person standard applies to both." *Rowland v. Log Cabin*, 658 N.W.2d 76 at 79 (S.D. 2003). Thus, in order to

---

[3] Johnson was more akin to a hotel guest than a tenant of the Bergmans. *See Young v. Harrison*, 284 F.3d 863, 868 (8th Cir. 2002) (holding, in the context of self-help eviction, that "[a]lthough South Dakota appears to have never faced or decided the issue of whether a hotel guest is a tenant or something less, like a licensee, we think that if faced with the issue, South Dakota would join many other jurisdictions in concluding that a hotel guest is not a tenant . . ."); *Rowland v. Log Cabin, Inc.*, 658 N.W.2d 76, 79 (S.D. 2003) ("A business invitee is defined as a business visitor 'who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of land.'" (quoting *Small v. McKennan Hosp.*, 437 N.W.2d 194, 199 (S.D. 1989))).

10

succeed in cases "against a dog owner, the plaintiff must establish that as an ordinary, prudent person, the owner should have foreseen the event that caused the injury and taken steps to prevent the injury." *Id.* at 78.

The South Dakota Supreme Court has explained that utilization of this reasonable person standard may make "owners of domesticated animals" liable under a theory of negligence "for harm caused by their pet if the owner knows or has reason to know that the animal has abnormally dangerous propensities." *Gehrts v. Batteen*, 620 N.W.2d 775, 777–78 (S.D. 2001) (citing *Bauman v. Auch*, 539 N.W.2d 320, 324 (S.D. 1995)). "[I]f a plaintiff proves that the dog owner knew or had reason to know of the dog's dangerous propensity the plaintiff will be deemed to have established the foreseeability element of negligence." *Rowland*, 658 N.W.2d at 79. While "evidence of the owner's knowledge that [the dog] constantly barked, bared its teeth, and strained at its leash is sufficient to establish dangerous propensities, absent an actual attack[,]"*Gehrts*, 620 N.W.2d at 778, "knowledge of a dog's barking alone" would not be "sufficient to establish the foreseeability that the dog might be dangerous[,]" *Davies v. GPHC, LLC*, 980 N.W.2d 251, 262 (S.D. 2022) (noting also a dog's "barking may have made her an annoyance to [others] . . . but that is much different from the inference that she possessed dangerous propensities that would have made the attack foreseeable to [the defendant]").

The South Dakota Supreme Court also explained that:

liability attaches regardless of the amount of care exercised by the owner. However, this liability is not strict liability. Rather, the failure to act upon the knowledge of an animal's abnormally dangerous

11

> propensities establishes a breach of the duty of care owed by the owner to those that come in contact with the animal. As it is a cause of action sounding in negligence, the defenses of contributory negligence and assumption of the risk are available to temper this liability.

*Gehrts*, 620 N.W.2d at 778 (citations omitted).

In the light most favorable to the Bergmans as the nonmoving parties, there exists a genuine dispute about their knowledge of Jack's dangerous propensities. It would not be beyond a reasonable jury to conclude, based off Angi's contradictory statements to Officer Skogen and her deposition testimony, that Jack only snapped and barked at the home intruder years before. *See* Docket 28-3; Docket 28-5 at 11; *see also* Docket 28-2 at 7. Furthermore, even assuming Jack bit someone years before, a jury could reasonably infer that this bite was not one formed from an aggressive and abnormally dangerous propensity. Instead, viewed in the Bergmans' favor, it was a protective and defensive bite against a trespasser.

Johnson also testified that he informed the Bergmans on the day of the bite that Jack snapped at St. Clair as he carried in his toiletry bag. Docket 28-1 at 5. However, Angi contested this, testifying that Johnson did not tell her or Brian that Jack snapped at Saint Clair, and that she was not otherwise aware that Jack had snapped at either of them. Docket 28-5 at 12. This further calls into dispute whether the Bergmans knew or had reason to know of Jack's dangerous propensities.

This Court finds that Johnson has not carried his burden of showing the absence of a material, factual dispute to succeed upon summary judgment on

12

whether the Bergmans knew or should have known of Jack's dangerous propensities.

### IV. Whether there is a genuine dispute of material fact that Johnson was not contributorily negligent in his conduct when Jack bit him.

Johnson next argues that the Bergmans' affirmative defense of contributory negligence fails as a matter of law due to insufficient evidence. Docket 27 at 11. He supports this argument by quoting Brian's deposition, when Johnson's counsel asks Brian if he knows of any evidence that Johnson provoked Jack before Jack bit him. *See* Docket 28-2 at 6. Brian responded he did not, and counsel then asked if Brian knew Johnson had been entering (or exiting, according to Johnson's deposition, Docket 28-1 at 5–6) the house when he was bit, to which Brian responded "Yes. That was where he [Jack] bit him [Johnson]." Docket 28-2 at 6.

The Bergmans respond that there is a genuine issue of material fact in dispute on contributory negligence. Docket 30 at 5. They raise Angi's deposition testimony that Jack was confined in their bedroom before Johnson was bit. Docket 28-5 at 8–9;[4] Docket 29-3. The Bergmans thus argue that there is evidence to support that Jack was confined in the bedroom about half

---

[4] They also rely on letters from other guests regarding Jack's character and their recollections that Jack would be in a bedroom with the door shut while they were at the Bergmans. Dockets 29-1–29-3. One letter specifically states Jack was in the bedroom at the time Johnson was bit. Docket 29-3. However, as these letters are not sworn statements made under the penalty of perjury, the Court cannot consider them for purposes of this summary judgment motion. "Although Rule 56, as amended in 2010, no longer requires a formal affidavit, an unsworn declaration or statement substituted for a sworn affidavit must still meet important statutory requirements." *Banks v. John Deere & Co.*, 829 F.3d 661, 668 (8th Cir. 2016). "Under 28 U.S.C. § 1746, an unsworn declaration or statement must be written, signed, dated, and certified as true and correct 'under penalty of perjury.'" *Id.*; *see* Fed. R. Civ. P. 56(c)(4) advisory committee's note to 2010 amendment.

13

an hour before Johnson was bit, as was Angi's habit to confine Jack when not in the house with him, and that "it is highly likely that it was [Johnson's] own error that led to him encountering the dog." Docket 30 at 5.

Contributory negligence exists in South Dakota statutory law under SDCL § 20-9-2.

> In all actions brought to recover damages for injuries to a person or to that person's property caused by the negligence of another, the fact that the plaintiff may have been guilty of contributory negligence does not bar a recovery when the contributory negligence of the plaintiff was slight in comparison with the negligence of the defendant, but in such case, the damages shall be reduced in proportion to the amount of plaintiff's contributory negligence.

SDCL § 20-9-2.

"Contributory negligence is a 'breach of duty which the law imposes upon persons to protect themselves from injury, and which, concurring and cooperating with actionable negligence for which defendant is responsible, contributes to the injury complained of as a proximate cause.'" *Johnson v. Armfield*, 672 N.W.2d 478, 481 (S.D. 2003) (citation omitted). "Ordinarily, questions of negligence, contributory negligence, and assumption of risk are for the jury, provided there is evidence to support them." *Myers v. Lennox Coop. Ass'n*, 307 N.W.2d 863, 864 (S.D. 1981); *see Rowland*, 658 N.W.2d at 80 (explaining contributory negligence is for the jury to decide "in all but the rarest of cases so long as there is evidence to support the issues" and "only when reasonable men can draw but one conclusion from facts and inferences [does it] become a matter of law and this rarely occurs"). It is the responsibility of the Court on a summary judgment motion not to determine the weight and

credibility of the evidence but to determine whether a sufficient factual dispute exists so the issue may proceed to a jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

First, although Johnson argues that it is irrelevant whether he entered the bedroom or not, South Dakota does not recognize strict liability for dog bites as discussed above. Moreover, as decided above, a genuine factual dispute exists whether the Bergmans knew of Jack's dangerous propensities, so liability is not summarily decided in Johnson's favor.

Nonetheless, summary judgment is appropriate on the affirmative defense of contributory negligence because the Bergmans have not directed this Court to evidence in the record that Johnson breached a "duty which the law imposes upon persons to protect themselves from injury, and which, concurring and cooperating with actionable negligence for which defendant is responsible, contributes to the injury complained of as a proximate cause." *See Johnson*, 672 N.W.2d at 481. Brian testified he did not know of any action taken by Johnson that would have provoked Jack. Assuming Angi confined Jack in her bedroom about half an hour before Johnson was bit as she claimed to usually do, Docket 28-5 at 8, 9, the record before the Court still does not permit a reasonable inference that Johnson failed to protect himself from injury by opening the bedroom door.

Brian testified neither Angi nor he had instructions for their house guests about Jack. *Id.* Neither Angi nor Johnson stated instructions were given regarding Jack or rooms in the house. *See* Docket 28-5 at 6.

15

Therefore, there is no material issue of fact in dispute on the question of contributory negligence, and this is one of the rare cases where summary judgment is warranted on the issue of contributory negligence.

### V.  Whether there is a genuine dispute of material fact that Johnson assumed the risk in his conduct when Jack bit him.

Finally, Johnson argues that the Bergmans failed to present sufficient evidence that Johnson assumed the risk when bit by Jack. Docket 27 at 11–12. He implies that he did not possess any appreciation of the danger Jack posed, and he did not have any reason to know of this danger. *Id.* at 12. The Bergmans do not address this argument in their response. A "failure to oppose a basis for summary judgment constitutes waiver of that argument." *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009). Further, it is not this "Court's responsibility to sift through the record to see if, perhaps, there was an issue of fact." *Id.* Therefore, summary judgment is proper on the Bergmans' affirmative defense of assumption of the risk.

### CONCLUSION

The issue of the Bergmans' knowledge of Jack's alleged dangerous propensities is not for this Court to determine in this partial summary judgment motion due to genuine and material factual disputes. Thus, Johnson's motion is denied with respect to this issue. However, the Bergmans' claim of contributory negligence could have but one conclusion before a jury, and the Bergmans' forfeited their responsive argument as to summary judgment on assumption of the risk. Therefore, Johnson's motion is granted on these issues.

**ORDER**

Accordingly, it is hereby

ORDERED that Johnson's motion for partial summary judgment regarding liability, Docket 25, is granted in part and denied in part.

Dated January 16, 2026.

BY THE COURT:

*/s/ Camela C. Theeler*
CAMELA C. THEELER
UNITED STATES DISTRICT JUDGE